UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| DOUGLAS RAY BURKEYBILE, Plaintiff, v. WASHOE COUNTY, et al., Defendants. | Case No. 3:12-cv-00558-MMD-WGC<br>ORDER<br>(Defs.' Motion to Dismiss – dkt. no. 3) |

## I. SUMMARY

Before the Court is Defendant Washoe County, Michael V. Roth, and Zachary Young's Motion to Dismiss. (Dkt. no. 3.) For the reasons set forth below, the Motion is granted.

## II. BACKGROUND

Plaintiff Douglas Ray Burkeybile was convicted of theft and assault with a deadly weapon on November 14, 2007. (*See* dkt. no. 1 at 1.) He was represented by Michael V. Roth, Assistant Public Defender for Washoe County ("APD Roth"). Burkeybile alleges that before his sentencing on December 18, 2007, APD Roth conferred with Zachary Young, Deputy District Attorney for Washoe County ("DDA Young"), and the two of them agreed that Burkeybile should be charged as a habitual offender. (*See id.* at 2.) He states that as a result of this agreement, DDA Young made a motion during the sentencing to amend the information in Burkeybile's indictment to add a charge under the habitual offender criminal statute, to which APD Roth did not object. (*See id.* at 2.) Judge Steven Elliot of the Second Judicial District Court later reduced the sentence

because of the erroneous addition of time for the habitual offender count. (*See id.*) Additionally, Judge Elliott found that APD Roth provided ineffective assistance concerning the habitual offender addition. (*See id.*)

Burkeybile brings two claims for relief: (1) violation of his constitutional right to due process in violation of 42 U.S.C. § 1983 against Washoe County, DDA Young, and APD Roth; and (2) legal malpractice for breach of the standard of care against Washoe County and APD Roth.

## III. LEGAL STANDARD

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 US 662, 678 (2009) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 679. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does not permit the

court to infer more than the mere possibility of misconduct, the complaint has "alleged – but not shown – that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570.

A complaint must contain either direct or inferential allegations concerning "all the material elements necessary to sustain recovery under *some* viable legal theory." *Twombly*, 550 U.S. at 562 (*quoting Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989) (emphasis in original)).

## IV. DISCUSSION

### A. Due Process

#### 1. DDA Young

Defendants assert that DDA Young is protected from liability under the doctrine of absolute immunity. "Prosecutors performing their official prosecutorial functions are entitled to absolute immunity against constitutional torts." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 912 (9th Cir. 2012). The prosecutor bears the burden of showing that immunity is justified for the function in question, since immunity attaches to the function performed by the prosecutor, rather than the prosecutor's identity. *Id.* Prosecutorial functions protected by absolute immunity are those "intimately associated with the judicial phase of the criminal process," even if they "involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom." *Imbler v. Pachtman*, 424 U.S. 409, 430 & n.33 (1976). A prosecutor receives qualified immunity when she engages in investigative or administrative functions, i.e. is essentially functioning as a police officer or investigator. *Lacey*, 649 F.3d at 1127.

The alleged conduct at issue in the case concerns a conversation between DDA Young and APD Roth regarding the charges against Burkeybile, and DDA Young's subsequent decision to amend the information to add a charge under the habitual offender statute. A prosecutor's discretion in determining what to charge is a core prosecutorial function protected by absolute immunity. *See Imbler*, 424 U.S. at 427-29.

The fact that a discussion or agreement occurred outside the courtroom is irrelevant. *Id.* at 430 & n.30. While a prosecutor's conversation with a defense attorney regarding criminal charges can certainly violate professional rules, there are no facts alleged in this case that suggest that DDA Young was acting outside of his prosecutorial role. DDA Young is entitled to absolute immunity for his alleged conduct.

**2. APD Roth**

Defendants argue that APD Roth's actions at issue in this case were not "under color of state law" and thus not subject to § 1983 liability. When a public defender acts as a representative of an indigent client in a criminal proceeding, she is not acting under color of state law for the purpose of § 1983 liability. *See Polk Cnty. v. Dodson*, 454 U.S. 312 (1981). Instead, a public defender is bound by the same duties and obligations to her client as any privately appointed attorney. *See id.* at 318. "[T]he attorney is the [defendant's] agent when acting, or failing to act, in furtherance of the litigation . . . ." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). This limitation on bringing § 1983 claims against public defenders acting within their representation of a client does not impact malpractice cases under state tort law. *See id.* at 325.

It is, however, possible for a public defender to act under color of state law within the scope of her employment. The Supreme Court has held that a public defender did so when making hiring and firing decisions on behalf of the state, *Branti v. Finkel*, 445 U.S. 507 (1980), and has left open the possibility of such a holding when a public defender performs certain administrative or investigative functions. *See Polk Cnty.*, 454 U.S. at 324-25.

APD Roth's action at issue in this case is his conversation with DDA Young concerning Burkeybile's sentencing. While Burkeybile may have legitimate complaints about the nature of that conversation and its implications for his sentencing, the conversation itself was clearly within the scope of APD Roth's representation of Burkeybile. APD Roth's actions were in furtherance of the litigation. As a result, a §

///

1983 challenge is an impermissible channel for relief. Plaintiff cannot assert a § 1983 claim against APD Roth.

**3. Washoe County**

Burkeybile's claim against Washoe County is based on the fact that "Roth and Young were acting within the scope of their employment and pursuant to a custom or policy of Washoe County." (Dkt. no. 1 at 1.) But Washoe County, as a municipality, "may be held liable under a claim brought under § 1983 only when the municipality inflicts an injury, and it may not be liable under a respondeat superior theory." *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1185 (9th Cir. 2002) (*quoting Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694 (1978)). As a result, a § 1983 plaintiff must allege either that the municipality itself violated someone's rights or that it directed its employee to do so, or that it was deliberately indifferent to a plaintiff's constitutional right. *Id.*

The first requirement of *Monell* is that "plaintiff must identify a 'policy' or 'custom' that caused the plaintiff injury." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) (*citing Monell*, 436 U.S. at 694; *Pembaur v. Cincinnati*, 475 U.S. 469, 480-81 (1986); *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). In justifying the imposition of liability for a municipal custom, the Supreme Court has noted that "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so wide-spread as to have the force of law." *Id.* at 404 (*citing Monell*, 436 U.S. at 690–91). Additionally, a custom or practice can be "inferred from widespread practices or 'evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded.'" *Nadell v. Las Vegas Metro. Police Dep't*, 268 F.3d 924, 929 (9th Cir. 2001) (*quoting Gillette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1992)). "A policy is a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir.

2006). Alternatively, a single act of a policymaker in some instances can be sufficient for a *Monell* claim when "the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur*, 475 U.S. at 481–82.

Here, Burkeybile's Complaint lacks any allegation that Washoe County was specifically involved in any alleged misconduct. Additionally, Plaintiff has pointed to no particular custom or policy that caused him injury or violated his constitutional rights. Absent such allegations, the Court is left to conclude that Burkeybile aims to hold the County liable only for the misdeeds of its employees – an impermissible invocation of vicarious liability. Accordingly, Burkeybile's § 1983 claim against Washoe County is dismissed.

### B. Negligence Claim

In light of the Court's dismissal of Plaintiff's § 1983 claim, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claim for negligence.

## V. CONCLUSION

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss is GRANTED.

The Clerk of the Court is instructed to close this case.

ENTERED THIS 29th day of August, 2013.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE